Chief Judge Breitel.
Petitioner water district brought, four separate proceedings to review the 1969 real property tax assessments by respondent towns on its water pipeline facilities located within the respective towns in Oswego County (Real Property Tax Law, art 7). The parties stipulated that the determination made for 1969 would be binding for the 1970 and 1971 assessments.
Special Term denied the petitions and confirmed the assessments. The Appellate Division reversed and remanded for a *604 determination of the amount of "functional depreciation” to be deducted from cost in arriving at the value of the facilities.
On remand, Supreme Court dismissed the petitions, finding that no functional depreciation had been proved. The Appellate Division reversed and granted the petitions, allowing a 50% deduction for functional depreciation. Respondents appeal.
The issue is whether the owner of specialty property, planned and constructed with a capacity for service in excess of present needs but in reasonable anticipation of future needs, is entitled to a deduction for "functional depreciation”.
There should be a reversal. "Functional depreciation”, commonly referred to as "obsolescence”, may also connote a capacity of the property for service in excess of reasonably anticipated needs. This type of functional depreciation, termed "superfluity”, is properly deductible from cost as a factor diminishing the value of the property. Where, however, as in this case, the excess capacity for production was planned and constructed in reasonable anticipation of future needs, that is, with deferred utility, there is no functional depreciation. This is because the excess capacity does not diminish the value of the property but instead constitutes a real element of value. Thus, it was error to allow a deduction for functional depreciation in this case.
The Onondaga County Water District was organized pursuant to article 5-A of the County Law as a nonprofit agency to develop from Lake Ontario a source of public water supply for Onondaga County, and eventually for parts of Oswego County.
The water system was completed in June, 1967, when it began operation. Water is taken from Lake Ontario at the City of Oswego and passed through a treatment plant in the Town of Oswego. The water is then pumped through a pipeline, crossing portions of the Towns of Oswego, Volney, Minetto and Schroeppel, to a terminal in Clay, Onondaga County, from which it is then distributed to facilities in Onondaga County.
On May 1, 1969, the taxable status date, the water system was operating at about 25% capacity. Deliberately planned and constructed to meet the future needs of Onondaga County and parts of Oswego County, the system has an estimated useful life of 40 years. By 1969, its use had steadily increased *605 since starting operations two years before, and its use is still increasing.
The boards of assessors of the four Oswego County towns assessed the property at full value, based upon the actual cost of construction. Reproduction cost was not used, apparently because of the newness of the facilities.
While accepting original cost for assessment purposes, the water district nevertheless contends that, since the system was operating at only 25% capacity, the remaining 75% of capacity represents an "overbuilding”, thus entitling it to a 75% deduction for "functional depreciation”.
All real property must be assessed at "full value” (Real Property Tax Law, § 306; Matter of Hellerstein v Assessor of Town of Islip, 37 NY2d 1, 3). Where property is regarded as a "specialty”, that is, property designed for "unique” purposes and for which there is no market, the proper method of valuation is ordinarily reproduction cost less depreciation (see Matter of Semple School for Girls v Boyland, 308 NY 382, 389; cf. 2 Orgel, Valuation Under Eminent Domain, § 211, at p 95).
While the parties agree that, apparently because of the newness of the facilities, actual construction cost is the convenient method of valuation, the controversy centers around the propriety of allowing a deduction for "functional depreciation”.
Functional depreciation has been defined as "obsolescence” or as "the loss of operating efficiency” (see, e.g., 1 Bonbright, Valuation of Property, at pp 187-188; 2 Orgel, Valuation Under Eminent Domain, §§ 211, 213, at pp 97-98, 105-106). More sophisticated analysis has recognized various subclasses, based upon causal distinctions, of the class "functional depreciation”. Thus, for example, the writers have distinguished among "physical obsolescence”, the out of datedness of an asset; "inadequacy”, the failure of the asset to meet present or projected needs; and "superfluity”, "duplication of facilities”, or "overbuilding”, the opposite of "inadequacy”, where the capacity of the asset exceeds reasonable anticipated demands (1 Bonbright, Valuation of Property, at p 188; 2 Orgel, Valuation Under Eminent Domain, at p 107).
The common thread running through each subclass of functional depreciation is that each is an "undesirable feature”, an "adverse influence”, or a "deterioration”; in short, a disutility diminishing in some way the value of the property (see Piazza *606 v Town Assessor of Town of Porter, 16 AD2d 863; Matter of Putnam Theat. Corp. v Gingold, 16 AD2d 413, 417; 1 Bonbright, Valuation of Property, at pp 187-188). Thus, true "superfluity” is present where there is "duplication of facilities or overbuilding * * * where the capacity of the existing plant is beyond the reasonable limit of possible demand” (2 Orgel, Valuation Under Eminent Domain, at p 107). Put another way, functional obsolescence in the form of superfluity occurs when there is a capacity for service in excess of reasonably anticipated needs and thus is functionally useless, now and in the future.
But there was no superfluity or improvident overbuilding in this instance, but deliberate and wise construction in reasonable anticipation of future needs. As such, it is perverse to regard such deferred utility as an "adverse influence” on, or "deterioration” of the property rather than as a real element of the value of the property because of future utility. Thus, as Special Term properly concluded, there should be no deduction from construction cost on account of "functional depreciation”, which is denominative of disutility rather than deferred utility.
As a matter of economic analysis, the builders of the water system invested what it was worth to them to build a system useful now and useful in the future. A gold mine is no less a gold mine because its exploitation is by choice or necessity deferred to a future time. In so investing its capital the water district acted as a thrifty, and perhaps wise, planner. Thus, it should be assumed that it invested as much as it did, recognizing (discounting) the fact that the presently excess capital investment would not yield a return until the future. It is not unlike the investor who purchases an asset knowing that its yield will issue only in the future. In so doing, he will pay no more for the asset than he would for a capitalized deferred income. Consequently, in this case, the original cost of construction was, by concession, the best expression of the value of this specialty property in 1969.
In effect what the water district is claiming is an exemption from taxes for its thrifty advance planning. Whether this is desirable is a matter of legislative policy in which the encouragement to advance planning is balanced against the possible burden without benefit to the municipalities through which the pipelines run. Notably, it is not foreign to legislative policy to provide by statute for tax exemption for water *607 system aqueducts (cf. Real Property Tax Law, § 406, subd 4; Administrative Code of City of New York, § 731-3.0). What is certain is that it would be a distortion of the judicial function to provide that exemption by fiat to the effect that what is valuable is not valuable because the return in value from the investment is deferred from the present to the future, when in truth an asset with future benefit deferred is valuable indeed. Nor is it appropriate to discount for deferral of utility just because either market value or voluntary investment of capital will take into account the deferral of utility.
Accordingly, the orders of the Appellate Division should be reversed, with costs, and the original judgments of Special Term confirming the assessments should be reinstated.
, Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Orders reversed, etc.