167 N.J. Super. 564 (1979)
401 A.2d 549
CLARENCE L. BOSTIAN, JR., AND/OR FRANKLIN TOWNSHIP TAXPAYERS ASSOCIATION, INC., PETITIONER-APPELLANT,
v.
FRANKLIN STATE BANK, TOWNSHIP OF FRANKLIN, RESPONDENT-RESPONDENT AND CROSS-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued March 6, 1979.
Decided April 5, 1979.
*566 Before Judges ARD and ANTELL.
Mr. Leo Rosenblum argued the cause for petitioner-appellant (Messrs. Rosenblum & Rosenblum, attorneys).
Mr. Richard A. Norris argued the cause for respondent and cross-appellant (Messrs. Norris, McLaughlin & Marcus, attorneys; Mr. Victor S. Elgort on the brief).
The opinion of the court was delivered by ANTELL, J.A.D.
Petitioner instituted this proceeding by filing an appeal with the Somerset County Board of Taxation, seeking an increase in the 1972 real property tax assessment levied against respondent Franklin State Bank (bank) by the Township of Franklin (township). The county board of taxation affirmed the assessment and petitioner appealed to the State Division of Tax Appeals (Division) where, pursuant to a written opinion dated March 2, 1978, the assessment was moderately increased. On appeal therefrom petitioner's central contention is that the determination *567 arrived at in the Division still reflects a substantial undervaluation of the building. The bank denies any undervaluation and on its cross-appeal asserts that the Division erred in refusing to allow a reduction from value for physical depreciation and obsolecence and in the inclusion of certain personal property in determining value.
The property is a two-story home office bank building which was completed in 1970 and for which a certificate of occupancy was issued October 1, 1970. The critical evidence as to value was received through the testimony of three witnesses: the township assessor, a real estate appraiser produced by the bank, and a real estate appraiser produced by the petitioner. All agreed that the correct approach to valuation of this special purpose building was to ascertain the cost of reproduction as of the valuation date, October 1, 1971, less an allowance for depreciation and obsolescence. Anaconda Co. v. Perth Amboy, 157 N.J. Super. 42, 46-47 (App.Div. 1978). The assessor, using an index in the Real Property Appraisal Manual For New Jersey Assessors,[1] first ascertained the unit construction cost as of 1954 for buildings of the classification which he determined was applicable to the bank. To this he applied a cost conversion factor of 1.57 to bring this figure into harmony with current economic conditions. After allowing for 3% physical depreciation he arrived at a valuation of $1,319,600.
The bank's appraiser, utilizing a different standard index, the Dodge Building Cost Calculator, determined a unit construction cost as of 1970 and brought this figure up to date by applying a cost conversion factor of 1.128. He then deducted 2% for physical depreciation and 35% for obsolescence and arrived at a true value of $1,145,450.
*568 Petitioner's expert also used the New Jersey Appraisal Manual, as did the township assessor, in estimating the bank's value for 1954. However, he used a different building classification than did the assessor. He also applied a different cost conversion factor of 2.19. This figure is made applicable by the Handbook for New Jersey Assessors to building costs in New Brunswick and he used it for the reason that "New Brunswick was located nearby." Using these figures, after allowing 2% for depreciation, his valuation was $2,495,700. In addition to valuation based on estimated reproduction cost, petitioner's witness also fixed a valuation based upon the actual original costs of construction which were obtained from a bank official on depositions. Incurred during 1969, these costs totalled $1,940,096, which were trended up to the valuation date by a conversion factor of 1.27. He then allowed 2% for physical depreciation and arrived at a net reproduction cost of $2,414,600.
The relevant figures are summarized in the following chart:

 Township Assessor Bank's Expert Taxpayers' Expert
 N.J. Manual Dodge Calculator N.J. Manual Actual Figure 
Year 1954 1970 1954 1969
 $866,504 $1,317,156 $1,075,848 $1,940,096
Conversion
Factors 1.57 1.128 2.19 1.27
1971 cost $1,360,412 $1,818,174 $2,546,607 $2,463,922
 Minus
Depreciation 3% 37% 2% 2%
 $1,319,600 $1,145,450 $2,495,700 $2,414,600
 Plus
Land $ 145,400 $ 232,695 $ 203,000 $ 203,000
 __________ __________ __________ __________
Final Value $1,465,000 $1,378,145 $2,698,700 $2,617,600
Assessed
Value $ 732,500 $ 689,072 $1,349,350 $1,308,800
(50% of
 true value)

The judge of taxation accepted the assessor's unit construction costs and conversion factor. From these he *569 determined an estimated reproduction cost as of the valuation date, October 1, 1971, of $1,360,447. To this he added $150,000 for equipment which he found should have been treated as part of the realty and taken into account by the assessor. In arriving at a true value of $1,410,500 he disallowed physical depreciation for the reason that the building was "brand new." Value of the land was fixed at $214,700 and this figure is not in dispute. The record demonstrates that the following determinations were made by the judge of taxation:

1971 Cost $1,360,447
"Adjusted" Cost $1,410,500 ($150,000 equipment assessment)
Land $ 214,700 (not disputed)
 __________
Final Value $1,625,200
Assessed Value $ 812,600

It is apparent that an arithmetical error was made in the amount of $100,000 by the judge in adding the cost of equipment.
The gist of petitioner's challenge to the determination below is expressed in the following language of its brief:
Instead of using the actual cost of the bank building as shown by the deposition of a Bank official and the New Jersey Assessor's Manual, the Division chose to accept cost figures submitted by the Assessor.
The issue thereby raised is whether valuation of this relatively new building must be governed by its actual original construction costs and petitioner's approach to estimated reproduction cost.
It is well settled that original cost of construction is properly to be considered on the question of valuation for tax purposes. But it is by no means controlling. Trenton v. John A. Roebling Sons Co., 24 N.J. Super. 213, 217 (App. Div. 1953); Kearny v. Tax Appeals Division, 137 N.J.L. 634, 637 (Sup.Ct. 1948); Ridgewood v. State Bd. of Tax *570 Appeals, 129 N.J.L. 121, 122 (Sup.Ct. 1942); 72 Am.Jur.2d, State and Local Taxation, § 765 at 88; 84 C.J.S. Taxation § 410 at 786; Annotation "Original cost of construction or reproduction cost as proper factors in assessing real property for taxation," 104 A.L.R. 790-94 (1936). The utility of cost figures, whether estimated or actual, lies in the fact that they are or may be criteria illuminating the ultimate question of fair market value. For taxation purposes fair market value is the price which could be obtained for the property, in money, at a fair sale between a willing seller not obliged to sell and a willing buyer not obliged to buy. In re Appeal of East Orange, 80 N.J. Super. 219, 230-31, certif. den. 41 N.J. 200 (1963); Sorokach v. Trusewich, 35 N.J. Super. 86, 89 (App.Div. 1955); N.J.A.C. 18:12-4.8(a). That a building was "overbuilt," as the assessor and the bank's expert opined this one was, either to satisfy the whim of its owner, or to meet a special purpose, or out of extravagance, does not command the expectation that such an investment will be reflected in the building's fair market value. 84 C.J.S. Taxation § 411 at 804. As stated in Haworth v. State Board of Tax Appeals, 132 N.J.L. 306 (Sup.Ct. 1944):
Cost is never conclusive on the question of value for tax purposes. Expensive buildings are frequently sold for much less than cost as is common knowledge. [at 308]
Clearly, the judge of taxation was not obliged as a matter of law to base his determination of true value on the building's actual construction costs.
The controversy below lay between the assessor and the bank's expert on the one hand and petitioner's expert on the other. It centered on economic conditions within the area and their impact on market value. The assessor and the bank's expert were in accord that the neighborhood was deteriorating and that this would undoubtedly depress a negotiated sales price with a prospective buyer. The assessor *571 alluded to a shopping center across the street "which is now almost completely empty." He referred to other vacancies and testified that the vacancy rate in certain buildings sometimes runs as high as 50%. The area is also experiencing considerable vandalism and a rising crime rate, thus creating a demand for security and discouraging business traffic. The assessor further noted that as of the valuation date the bank was functioning as a nonconforming use in the area under the then existing zoning ordinance, a factor adverse to value.
The disagreement between the assessor and the petitioner's expert was expressed chiefly in terms of the different cost conversion factors each believed was applicable to the 1954 unit construction cost given by the Manual and in the weight to be given the building's actual cost of construction. In justifying his use of a 1.57 cost conversion factor rather than the 2.19 factor utilized by petitioner's expert, the assessor first explained that the latter multiple is found in the Assessor's Handbook for use in New Brunswick and is not appropriate to conditions in Franklin Township. Acting under the mandate upon all New Jersey assessors to adapt cost conversion factors in accordance with local costs prevailing in their own particular communities, he conducted his own study of valuation. In so doing he studied figures taken from 125 to 150 actual sales of one-family homes and several industrial and commercial buildings, and compared these to prices resulting from application of the 2.19 cost conversion factor. He found from this that if the buildings sold were to be valued at the price levels dictated by the 2.19 multiple, it would be necessary to assume that the lands were given a negative value in the actual sales, an assumption which is contrary to logic and the known facts. He also made his own detailed study of construction costs and interviewed a number of contractors working within the township before concluding that a factor of 1.57 fairly reflected construction costs trended up from 1954 and economic conditions in Franklin Township as of the valuation date.
*572 Notably, the 1.57 factor is uniformly applied to all taxable properties throughout the township for valuation purposes, and the significance of this was conceded by petitioner's own witness. When asked what cost conversion factor he would have applied to the bank's building if he had been applying 1.57 to all the other properties in the township, he stated:
Well, obviously, it's incumbent on the Assessor to get uniformity in his assessments, so obviously if he establishes a certain cost conversion factor, it should reasonable [sic] apply across the board.
The assessor also testified that actual construction costs are always disregarded when valuations are made for assessment purposes, and that he has never taken the actual cost of construction into consideration. The reason for this is to be found in the variations from a common level of assessed to true value ratios[2] which would result where certain properties are valued pursuant to a formula which takes market conditions into account and others are appraised under standards which disregard those factors and rely exclusively on the naked cost of construction. The destructive effect this would have on uniformity is obvious.
It is noted, also, that the township's 50% ratio of assessed to true value for that year was not fatally at variance with the Director's average ratio[2] of 46.19% based upon his sales studies between January and June 1972.
The analysis offered by the bank's expert essentially paralleled the assessor's, but differed in its manner of presentation. His method was first to determine the building's basic construction cost as of the valuation date. He then allowed 2% for physical depreciation, 10% for functional obsolescence and 25% for economic obsolescence. In the law of real property valuation these terms have a special meaning. Functional obsolescence refers to the loss in value resulting *573 from conditions within the building itself and may include features of additional cost installed to gratify the owner or which are unique to the special purpose of the building but which do not enhance its value on the market. The terms "superfluity," "duplication of facilities" and "overbuilding" are used to describe such buildings whose functional characteristics exceed reasonably foreseeable demands. I Bonbright, Valuation of Property, at 188 (1937); Orgel, Valuation Under Eminent Domain, § 211 at 662 (1936). Economic obsolescence refers to loss in value resulting from conditions outside the building, i.e., its environment, adjacent property, and may take into account the effect of a declining neighborhood economy. Anaconda Co. v. Perth Amboy, supra 157 N.J. Super. at 51; Stack v. Hoboken, 45 N.J. Super. 294, 299 (App.Div. 1957); Onondaga Cty. Water Dist. v. Bd. of Assessors, 39 N.Y.2d 601, 385 N.Y.S.2d 13, 15-16, 350 N.E.2d 390, 392 (Ct.App. 1976); Travellers Bldg. Ass'n v. Providence Redevelop. Ag., 106 R.I. 83, 256 A.2d 5, 9 (Sup.Ct. 1969); Fisher-New Center Co. v. Michigan State Tax Com'n., 380 Mich. 340, 157 N.W.2d 271, 279 (Sup.Ct. 1968); Dull v. Plymouth Cty. Bd. of Review, 260 Iowa 828, 150 N.W.2d 91, 93-94 (Sup.Ct. 1967); Rau v. Fritz, 81 S.D. 311, 134 N.W.2d 773 (Sup. Ct. 1965); Real Property Appraisal Manual for New Jersey Assessors (2 ed. 1963), at 131.
Some confusion exists as to the exact rationale of the opinion below stemming from the statement by the judge of taxation that an allowance for obsolescence would be "inappropriate." On its face this appears inconsistent with his determination to accept the assessor's figures since these had already taken into account the deteriorating environment, the same factor which the bank's expert called economic obsolescence. We are satisfied from our examination of the transcript and the opinion below that this apparent conflict proceeded from the judge's mistaken understanding as to the meaning of "obsolescence". In the belief that it could be allowed in reduction of value only as a function of the *574 building's age and resulting deterioration he reasoned that the allowance is precluded in the case of a new building. This is clearly incorrect.
It should be emphasized that no real discrepancy exists between the testimony of these two witnesses. Whatever differences appear have to do with technique and not substance. Whereas the bank's expert specifically allocated a separate percentage allowance for economic obsolescence, the assessor took account of economic obsolescence without calling it that and reflected its impact in his choice of a cost conversion factor. But the essential elements which went into their calculations did not differ.
It is clear that the assessor's explanation simply came through more clearly and was better understood by the judge than the bank's, even though the two were basically the same. We therefore find no inconsistency in his accepting the methodology of one and rejecting that of the other.
Petitioner's argument that the economic obsolescence factor, as applied by the assessor or by the bank's expert, was not allowable because the area's decline was well under way at the time of construction has not been overlooked. Our response to this, however, is that the bank's foreknowledge of neighborhood conditions obviously plays no part in determining the property's fair market value.
On this appeal our function is to determine whether the judgment below is supported by substantial credible evidence on the whole record, allowing for agency expertise and the opportunity to evaluate the credibility of the witnesses. Parkview Village Asso. v. Collingswood, 62 N.J. 21, 34 (1972). In light of the assessor's testimony we conclude that the determination before us as to true value is well grounded in substantial credible evidence. That finding will not be disturbed. In re Appeal of the City of East Orange, 103 N.J. Super. 109, 113-14 (App.Div. 1968); Passaic v. Gera Mills, 55 N.J. Super. 73, 91-92 (App.Div.), certif. den. 30 N.J. 153 (1959).
*575 Regrettably, no findings were made by the judge of taxation relative to the bank's claim for physical depreciation other than to say that "there is no real basis to allow that determination." We have often stated that there is a "compelling need" for quasi-judicial and administrative agencies to provide findings and reasons in order for a reviewing court to determine the correctness of the determination below. Benjamin Moore & Co. v. Newark, 133 N.J. Super. 427, 429 (App.Div. 1975); Van Realty, Inc. v. Passaic, 117 N.J. Super. 425, 429 (App.Div. 1971).
The building was one year old on the valuation date and all three experts agreed that an allowance for depreciation was appropriate. The experts for the bank and for the petitioner each allowed 2% for physical depreciation and the assessor allowed 3% based on the economic life of the building. In light of this evidence a remand will be necessary to obtain a reasoned factual statement from the judge of taxation for disallowing physical depreciation or, in the event he elects to modify his determination in this respect, a statement as to the amount of depreciation allowed. Esposito v. Esposito, 158 N.J. Super. 285, 291 (App.Div. 1978); Benjamin Moore & Co. v. Newark, supra 133 N.J. Super. at 428; Rek Investment Co. v. Newark, 80 N.J. Super. 552, 562 (App.Div. 1963).
It is evident from what we have said that we regard the bank's cross-appeal from the refusal below to allow for economic obsolescence as being without merit since that allowance from value was factored into the assessor's computations which were accepted by the judge of taxation. But the bank cites the assessor's testimony that when he weighed the adverse neighborhood conditions he wrongly anticipated that the new bank building would contribute measurably to the rehabilitation of the area. He added that had he foreseen events correctly he probably would have given further consideration to a reduction from value for economic obsolescence. From this the bank argues that such a reduction should now be allowed.
*576 The assessor's testimony was too indefinite as to the extent of any allowance he would have made to form a basis for the relief requested. Furthermore, the effect of neighborhood conditions must be applied equally to the value of all taxable properties in the area, and to grant the bank an allowance for economic obsolescence over and above that which the assessor built into his uniformly applied cost conversion factor would be discriminatory and therefore not allowable.
Our view is different as to the bank's claim for functional obsolescence. This allowance was rejected below with no comment other than "This is a brand-new bank building" and "There is certainly no functional or economic depreciation to this property that has been adequately set forth in the record."
As we said earlier, functional obsolescence, insofar as it bears on market value, may arise from a range of factors other than outmoded characteristics associated with age or a failure to keep pace with advancing technology. The record herein reveals abundant evidence of over-improvements and features uniquely designed for the special purpose of a home office bank building and which might well not be recoverable as part of a fair market price. Evidence of bullet-proof glass, bullet-resistent doors, extra high lobby ceilings, ornate chandeliers, a cupola with a clock and weathervane, three vaults, two elevators and eight drive-up islands, had certainly "been adequately set forth in the record" and should have been considered. Also before the judge of taxation was the opinion of the bank's expert allocating an allowance of 10% for functional obsolescence. In the absence of findings we are unable to determine what consideration, if any, was given thereto or to appraise the correctness of the Division's determination to allow nothing for functional obsolescence. It is therefore necessary that we remand to the Division to obtain complete findings and conclusions relative to the issue of functional obsolescence.
On its cross-appeal the bank also contends that the judge of taxation erroneously included certain items of equipment *577 in determining value. These consisted of vault doors, counters and safe deposit boxes. In reaching this determination the judge of taxation simply stated that the value thereof "should be added to assessor's valuation." Remarking only that "the actual cost is the actual value" he valued them at original 1969 costs, $150,000, and refused to trend them to the valuation date either by the use of petitioner's 1.27 multiple or in any other way.
The test as to whether personalty has become so affixed to the building as to form part of the realty was recently redefined by the Supreme Court in Bayonne v. Port Jersey Corp., 79 N.J. 367 (1979). No longer applicable is the "institutional doctrine" whereby chattels were treated as realty where their removal "will prevent the structure from being used for the purpose for which it was erected or for which it has been adapted." National Lead Co. v. Sayreville, 132 N.J. Super. 30, 39 (App.Div. 1975); Smyth Sales Corp. v. Norfolk B. & L. Ass'n, 116 N.J.L. 293, 298 (E. & A. 1935). The test now relevant is whether removal of the chattels "will do irreparable or serious physical injury or damage to the freehold." Bayonne v. Port Jersey Corporation, supra at 79 N.J. at 378; N.J.S.A. 54:11A-2.
The complete lack of findings makes it impossible for us to review the correctness of the determination below that the equipment in question forms part of the realty and should therefore have been included in the assessor's determination of value under any standard. A remand for findings and conclusions is therefore necessary. Rek Investment Co. v. Newark, supra 80 N.J. Super. at 562. In the event the judge of taxation redetermines that the equipment forms a part of the realty he is directed to make a reasoned statement of its value and to state the basis of his determination as to whether basic costs should be trended to the date of valuation. We also anticipate that the judge of taxation will furnish us a precise and detailed description of the chattels in question with particular attention to the manner in which *578 they are attached to the realty. See, further, National Lead Co. v. Sayreville, 132 N.J. Super. supra at 41.
On the main appeal the determination under review is affirmed. With respect to the cross-appeal the matter is remanded to the State Division of Taxation for findings and conclusions as to the allowance of physical depreciation, functional obsolescence and the inclusion of personal property in the determination of value. The judge of taxation is directed to file his findings and conclusions not later than 30 days from the date of the filing of this opinion. We retain jurisdiction.
NOTES
[1] The Manual and the Handbook for New Jersey Assessors are issued as official publications of the Local Property Tax Bureau of the Division of Taxation. The use of the Manual is required in connection with real property revaluation work by appraisal firms. N.J.A.C. 18:12-4.9.
[2] Explained in In re Appeals of Kents 2124 Atlantic Ave., Inc., 34 N.J. 21, 26 (1961).