**NOT FOR PUBLICATION WITHOUT APPROVAL OF**
**THE TAX COURT COMMITTEE ON OPINIONS**

**TAX COURT OF NEW JERSEY**



MALA SUNDAR
JUDGE

Richard J. Hughes Justice Complex
P.O. Box 975
Trenton, New Jersey 08625-0975
609 815-2922, Ext. 54630 Fax 609 376-3018

April 14, 2020

Daniel J. Pollak, Esq.
Brach Eichler, L.L.C.
Attorneys for Plaintiff

Martin Allen, Esq.
Wesley Buirkle, Esq.
DiFrancesco Bateman <u>et al.</u>, P.C.
Attorneys for Defendant

> Re: Metz Family Ltd. Partnership v. Township of Freehold
> Block 5, Lot 19.03
> <u>Docket Nos. 009027-2014, 001064-2015, 000482-2016, 000783-2017</u>

Dear Counsel:

This letter constitutes the court's decision of Defendant's motion for reconsideration in the above-captioned matters. In a letter opinion dated March 9, 2020, this court determined the value of the above-captioned property, a local retail shopping center with a warehouse component to the rear owned by Plaintiff, for each tax year 2014 to 2017.[1] The court's determination was based on the credible evidence before it, which consisted of Plaintiff's appraiser's opinion and report (including attachments to the report), and the appraiser's testimony in this regard. As part of the value determination, the court determined a per-square-foot (PSF) economic rent for the retail portion of the Subject (part of which was owner-occupied) and another for the warehouse portion of the Subject (fully owner-occupied). The court also

---

[1] The assessments for each tax year 2014 to 2017 were $5,800,000; $6,208,600; $6,316,800; and $6,331,200. The court's value determination for each of these tax years was $5,186,080; $5,368,547; $5,808,012; and $5,666,400. Plaintiff's appraiser opined the Subject's value as $4,550,000; $4,550,000; $4,000,000; and $3,650,000 for each tax year. Defendant did not adduce any independent evidence as to value, instead, withdrew its counterclaims and rested on the assessments.







found that "attributing a separate PSF rent for the mezzanine space is unwarranted under the facts here." This finding was in connection with Plaintiff's appraiser identifying the Subject as having a total of 3,236 square feet (SF) of mezzanine space in the retail portion,[2] to which he imputed a PSF rent of 1/3 of the PSF rent he had concluded for the Subject's retail portion, and as having 7,160 SF of mezzanine space in the warehouse portion to which he imputed no additional PSF rent since it was, in his opinion, not realty based on its physical characteristics.

In its instant motion, Defendant ("Township") argues that the court erred in its value determinations. It contends that since the court rejected the attribution of additional rent to the mezzanine spaces totaling 10,396 SF, and did not either "include[] the mezzanine space at the Court-determined gross rental value . . . [PSF], or affirm[] the assessment[s]," the court erroneously left a "a significant portion of the property" without value, a dereliction of the court's duty to find a value for the entire Subject. Plaintiff argues that under the standards for reconsideration, the court did not ignore any controlling law or facts, but rather found, based on the facts, that the mezzanine spaces did not merit imputation of an additional PSF. The court agrees with Plaintiff.

**ANALYSIS**

A motion for reconsideration "shall state with specificity the basis on which it is made, including a statement of the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred." R. 4:49-2. Granting such motion is "within the sound discretion of the Court, to be exercised in the interest of justice." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990) (citations omitted).

---

[2] This is the sum of 2,252 SF inside the pool showroom occupied by Plaintiff, made of plywood floor, and used for storage except for 452 SF used as office space, plus 984 SF inside a leased unit used as office/teaching/lesson space by the current tenant, a music store.

Reconsideration is appropriate in a "narrow corridor" of cases, where either "1) the Court has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the Court either did not consider, or failed to appreciate the significance of probative, competent evidence." Ibid. In other words, it must be demonstrated that the court acted in a manner that is "arbitrary, capricious, or unreasonable," prior to the court engaging in the reconsideration process. Ibid.

Reconsideration is not a proxy for filing an appeal. See Palumbo v. Township of Old Bridge, 243 N.J. Super. 142, 147 n.3 (App. Div. 1990). It is not a means to challenge a court's decision merely because a party is dissatisfied with the court's decision. D'Atria, 242 N.J. Super. at 401. "[M]otion practice must come to an end at some point, and if repetitive bites at the apple are allowed, the core will swiftly sour." Ibid. However, "if a litigant wishes to bring new or additional information to the Court's attention which it could not have provided on the first application, the Court should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." Ibid.

The Township argues that the court erred both in law and facts. Factually, per the Township, the court ignored the evidence that mezzanine space has value-in-exchange, such evidence being Plaintiff's appraiser's imputation of additional income to the mezzanine space in the Subject's retail portion. The error in law, per the Township, is the court's failure to impute any income to the mezzanine spaces in the Subject since a court must find value for the whole property and precedent provides that if mezzanine space has value-in-exchange, it must be included in or added to the gross leasable area, and a rent imputed to the total (relying upon Spiegel v. Town of Harrison, 18 N.J. Tax 416 (Tax 1999), aff'd, 19 N.J. Tax 291 (App. Div. 2001); Abe Schrader Corp. v. Town of Secaucus, 8 N.J. Tax 390 (Tax 1986); and New

3

<u>Cumberland Corp. v. Roselle</u>, 3 N.J. Tax 345 (Tax 1981)). Thus, the Township argues, the court should have first made a factual finding that the mezzanine spaces (retail and/or warehouse) were so substandard in construction and utility that there could be no value-in-exchange for such spaces. Since the court failed to do so, it was obligated to find a PSF rental for the mezzanine space, and if lacking evidence of this amount, should have affirmed the assessments.

Plaintiff maintains that the court's value determination encompassed the entire Subject, and its ruling was simply that no *additional* rent should be imputed to the Subject's mezzanine areas due to the lack of objective market evidence. Plaintiff maintains that although its appraiser's uncontradicted testimony was that the mezzanine in the warehouse portion of the Subject was personal property, the fact that the court did not make a specific finding in this regard does not undo the validity of the court's value conclusions. Rather, Plaintiff states, the court's value determinations agree with Plaintiff's appraiser's testimony that mezzanines may or may not have utility or value to a tenant (in retail spaces) and would actually be detrimental in a warehouse as they would compromise the ceiling heights, a crucial feature in a warehouse. Further, argues Plaintiff, the base rent for the leased or leasable space captures the entire space including the mezzanine, thus, the court-determined PSF rent was for the entire Subject and encompassed any value that could be attributed to the mezzanine space in the Subject.

The Township's argument that the court did not value the Subject's mezzanine spaces presupposes that such spaces were *not* included in the gross leased or leasable area. This presupposition is flawed. There was simply no evidence adduced that the mezzanine spaces were excluded from the gross leased spaces. For instance, as the court pointed out in its opinion, the lease abstract of the retail unit at the Subject which had the 984 SF of mezzanine space evidenced that the lease was for 6,800 SF in the Subject. Although the abstract stated that there

4

was 1,000 SF of office space, it also defined the rented area as measured from the exterior outside walls only, not to divided spaces in the interior. Nor did it define additional rent to mean rent for the 984 SF of mezzanine space. There was no evidence that the rent for this unit ($7,953 per month for years 1-3) was for 7,800 SF, or 6,800 SF plus 984 SF.[3]

Similarly, there was no evidence that Plaintiff's appraiser's comparable leases (retail or warehouse), (1) had mezzanine space; (2) excluded such space from the gross leased area; or (3) excluded such space from the base rent or provided an additional different rent for the same. Indeed, it would be difficult to comprehend a situation where the tenant would rent a space without the mezzanine area and where the base rent specifically excludes such an area (unless facts and market-based evidence shows that this mezzanine space was or could be rented separately to a different tenant which had independent access to the same, or that the tenant did not rent such space). See, e.g., Spiegel, 18 N.J. Tax at 423-24 (a lease would normally include the mezzanine area, and there was "no evidence that the mezzanine area would be the subject of a separate tenancy"); Robert L. Garrett, et al., The Valuation of Shopping Centers, Am. Inst. of Real Estate Appraisers 22 (1976) ("Lending institutions, the buyer, and the developer [of retail shopping centers] think only in terms of 'gross leasable area' since this – and not just the sales area – is what the tenant leases").

---

[3] The court rejects the Township's contention that when the Plaintiff's appraiser chose not to use the Subject's rentals as evidence of the economic PSF rent for the Subject, it cannot be used to support the court's decision not to impute additional rent to the mezzanine space. The lease abstracts were included in Plaintiff's appraiser's report, which entire report was in evidence without objection by the Township. Thus, they were properly at the court's disposal to decide the credibility of imputing additional rent to the mezzanine areas in the Subject. Indeed, there would have been nothing to stop the Township from using these documents (or even the rent rolls appended to the report) in cross-examination, had it so chosen, on the issue of rent attributable the mezzanine spaces.

Plaintiff's appraiser's undisputed testimony was that mezzanine spaces in retail spaces may or may not command the same PSF rent due to limited utility, access, or even desirability. His undisputed testimony also was that mezzanine space in a warehouse is generally a deterrent to the full and efficient use of the space, as it would reduce the ceiling heights, and therefore would not command any additional rent. The Township's cross-examination as to the mezzanine space was limited to attacking the credibility of the appraiser using a 33% figure as the economic rent for the mezzanine. The Township's cross-examination as to the comparables' rents did not raise any questions as to mezzanine spaces therein. The Township chose not to proffer any evidence as to valuation, and thus, any evidence to show the retail or warehouse market generally excludes mezzanine spaces from the gross leasable/leased area and that a separate or additional amount is generally charged for use of the mezzanine space. Thus, based on the evidence before it, when the court determined a PSF rent for the retail and warehouse portions of the Subject (based on evidence it deemed credible, including the PSF rent of certain comparables and certain adjustments to the same), it was determining the value of the entire Subject, and simply rejected imputation of additional rent to the mezzanine spaces.[4]

Because the premise of the Township's reconsideration motion is untenable, its reliance on its above-cited precedent which included the mezzanine space in the gross lease area is misplaced.[5] First, none of these cases stand for the proposition that a gross leased area always

---

[4] Note that Plaintiff's appraiser did not impute additional rent to the mezzanine space in the Subject's warehouse portion, deeming it personal property. Although the court did not (and did not need to) make a specific finding in this regard, it agreed with him in substance: viz., that the mezzanine space in the warehouse did not warrant additional rent. However, this same result would ensue regardless of the mezzanine's physical characteristics due to the absence of any evidence justifying the imputation of a separate additional rent to it.

[5] The three cases relied upon by the Township in support of its argument as to mezzanine space, are trial court decisions, which this court is not bound to follow. While Spiegel was affirmed by the

excludes mezzanine space, and that the base rent for the property also therefore excludes rent for this space, and consequently, the court must add such areas to the gross leasable space and thereafter attribute a separate value to it. Note that in <u>Spiegel</u>, while the property was described as a warehouse having a total area of "274,[]326" SF, of which 248,286 SF comprised a "first floor" and 26,040 SF was a "second floor mezzanine area," *the parties stipulated to this number* (274,326 SF) and the experts for both parties did not contend otherwise. 18 N.J. Tax at 420.

Second, these cases only endorse the principle that the total or gross leased area includes the mezzanine space, and therefore, the base rent would include this space. Thus, in <u>Spiegel</u>, the court observed that rental of the property would be a rental of the entire place and rejected the municipality's expert's attributing a separate lower rental for the mezzanine portion since the mezzanine space would not be the subject of a separate tenancy. <u>Id.</u> at 423-24. This ruling did not mean, and cannot be construed as a holding, that mezzanine spaces are generally excluded from gross leasable or leased areas. Thus, when the court applied a uniform $1.50 PSF rent to the 274,326 SF, it did so because (1) the parties had stipulated to the gross leasable area as 274,326 SF, and (2) the existing lease at $1.33 PSF for the entire portion supported the application of $1.50 PSF for the stipulated to entire area. <u>Id.</u> at 424.

In <u>Abe Schrader</u>, the facts recited that the gross leasable area was 202,040 SF, leased to two tenants, with one tenant occupying floor area of 107,233 SF and mezzanine space of 19,980 SF. 8 N.J. Tax at 392. Again, this only showed that the total leased area included the mezzanine space, and thus, the base rent would include this space. Therefore, when the court then

---

Appellate Division, the appeal addressed only the alleged improper reliance on a lease with an "unusual" tax reimbursement provision therein. 19 N.J. Tax at 293-95.

determined the economic rent based on the credibility of comparables of each expert, id. at 395-96, it did not need to attribute a separate additional rent to the mezzanine space.

In New Cumberland Corp., where the court used a building residual method, see 3 N.J. Tax at 354-55, it is impossible to discern the special treatment to the mezzanine space. The opinion and value conclusion therein, leaves the court with the same impression herein: mezzanine space is included in gross leasable space, with the base PSF rent factoring in such space, unless facts show otherwise.[6]

Plaintiff also points out, as persuasive but not binding authority, the unpublished opinion in Benedetto v. Borough of Little Ferry, 2017 N.J. Tax Unpub. LEXIS 53, *41-43 (Tax 2017), that additional rent should not be attributed to mezzanine space. There the court found that the warehouse area "would be rented to include the approximate 5,000 square feet of unfinished mezzanine." Id. at *41. In doing so, it found credible the taxpayer's appraiser's testimony that the unfinished mezzanine space in each leased unit in the subject was included in the leased area; that generally, mezzanine space is never "rented independently of the balance of where it's located within"; and that unfinished mezzanine space is "not ascribed a separate rental value" but is "included in the lease of the ground floor area." Id. at *42 (internal quotations marks omitted). The court also noted the lack of evidence that mezzanine space would be leased under

---

[6] The facts describe the gross area as 96,270 SF, with an older "main area" having 81,270 SF and a 3,000 SF concrete floored mezzanine (for bathrooms and dining area), and a newer extension of 15,000 SF with 5,000 SF of air-conditioned offices (plus bathrooms). New Cumberland Corp., 3 N.J. Tax at 348-49. The "gross area" of 81,270 SF + 3,000 SF + 15,000 SF + 5,000 SF is 104,270 SF, not 96,270 SF. Note that the taxpayer's appraiser concluded a value of $1.40 PSF for a total of $135,000 (rounded). Id. at 350. This is presumably the product of 96,270 SF x $1.40 ($134,778). The court did not "add back" the mezzanine space, or if it did, it does not appear anywhere in the opinion. Rather, the court analyzed the credibility of the comparable leases used by each expert and arrived at a conclusion of a market rent PSF. Id. at 353-54.

a separate tenancy or would require payment of a "separate additional rent," and found the mezzanine space at issue as difficult to access. Ibid.

The Township contends as an unpublished opinion, Benedetto should not be cited or relied upon. Even if considered, the Township argues that it is inapplicable because the court's conclusion rested purely upon the credibility of the appraiser's opinion that the space was of little to no value, and the fact that the space was unfinished with access issues. Whereas here, per the Township, Plaintiff's appraiser ascribed a separate rent for the mezzanine space in the retail portion of the Subject, thereby admitting that the Subject's mezzanine space in the retail portion has value-in-exchange for attribution of additional rent. Nor, the Township contends, was there any fact-finding by this court as to the lack of utility of the mezzanine space in the Subject's warehouse portion, therefore, such space must be deemed to have a value-in-exchange.

Although the Township is procedurally correct as to the citation to, and reliance upon, an unpublished opinion, see R. 1:36-3, it misses the point. Spiegel, the published opinion which the Township relies upon, says exactly what the expert in Benedetto opined: mezzanine area is generally not the subject of a separate tenancy and therefore should not be imputed with additional rental income. And here also, there was simply no evidence to the contrary. All the Township is doing is raising an inference that since Plaintiff's appraiser attributed an additional rent to the Subject's mezzanine area (retail portion), the court must also do so. This inference is not evidence that the mezzanine space is excluded from the leased area, and thus, from the base rent. Indeed, unlike in Benedetto, here, the court was provided the lease abstract of the unit with the mezzanine space in the Subject's retail portion which did not show that the leased portion excluded the mezzanine space, that the base rent excluded the rent for the mezzanine space, or that additional rent was defined to include a separate rent for the mezzanine space. And here

9

also Plaintiff's appraiser testified that mezzanine space may or may not have the same value-in-exchange as the ground floor area, may or may not be desired by a tenant, and will be a deterrent in warehouse space, and thus, will not have the same utility as the ground floor area.

Contrary to the Township's insistence, the court does not have to first make a factual finding that a mezzanine space is unfinished, of little-to-no-utility, of substandard quality, and a deterrent to use of the leased space before deciding not to impute additional rent to that space. See also supra n.4. Unless it is shown that the gross leased area specifically excludes mezzanine space, and that the base rent excludes such space, and that the market leases such space separately, the court is not bound by any of the factual findings in any of the trial decisions in this regard. The cases that the Township relies upon simply do not support the premise of its motion for reconsideration that established law deems mezzanine space as generally excluded from the gross leasable area; therefore, it must always be added to that area and must be attributed a separate PSF rent. To the contrary, such an inquiry is fact sensitive, and depends on the market and the evidence in support of this proposition.

The court's endeavor is to determine the value of a subject property based on the evidence proffered to, and accepted by, it. This is exactly what the court did here. The court accepted as credible some portions of Plaintiff's appraiser's opinions and conclusions (that the Subject should be valued in distinct portions: retail and warehouse; his lease comparables; adjustments to the comparables' rents) and rejected others (that the pool showroom portion of the Subject merits a different value-in-exchange; imputing additional rent to the Subject's mezzanine space; lease comparables; adjustments to the comparables' rents; loading the capitalization rate; the value opinion under the sales comparison approach). The court can do so, as it is not bound to accept an expert appraiser's opinion blindly, nor required to reject the same outright, and can

accept parts of an opinion which are credible. The court's findings as to imputing no additional rent to the Subject's mezzanine spaces (Plaintiff's appraiser having done so only for such space in the retail portion), and its final value conclusion for the Subject for each tax year, do not, in its opinion, lead to a "loud guffaw or involuntary gasp" when reviewing its reasoning. See D'Atria, 242 N.J. Super. at 401. If the Township feels that the court erred in determining the credibility of the evidence before it, then it is for the Appellate Division to find this as an error. Dissatisfaction with the court's decision is not grounds for revisiting the same by filing a motion for reconsideration. Palumbo, 243 N.J. Super. at 147 n.3 ("We . . . disapprove of the excessive use of motions for reconsideration . . . [which are being] made with increasing frequency when essentially there is little more than disagreement with the court's decision. Motions for reconsideration were never meant to be a substitute for the filing of a timely appeal.").

**CONCLUSION**

For all of the aforementioned reasons, the court denies the Township's motion for reconsideration.

Very Truly Yours,

Mala Sundar, J.T.C.

11