193 N.J. Super. 261 (1984)
473 A.2d 548
CPC INT'L, INC., PLAINTIFF-RESPONDENT,
v.
BOR. OF ENGLEWOOD CLIFFS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 13, 1983.
Decided January 26, 1984.
*264 Before Judges ANTELL, JOELSON and McELROY.
Melvin Gittleman argued the cause for appellant (Melvin Gittleman, attorney; Steven Muhlstock of counsel and on the brief).
Raymond J. Lamb argued the cause for respondent (Lamb, Chappell, Hartung, Gallipolli & Coughlin, attorneys; Raymond J. Lamb on the brief).
The Opinion of the Court was delivered by, ANTELL, P.J.A.D.
The substantial question we consider on this appeal by defendant taxing district from a judgment of the Tax Court is whether, in reducing the assessed valuation of plaintiff's property for the years 1978, 1979 and 1980, the judgment under review correctly allowed a 16% adjustment for functional obsolescence.
Plaintiff's property consists of 22.605 acres of land occupied by four multi-storied buildings that are connected by enclosed bridges. The complex was constructed in 1967-68 as plaintiff's international corporate headquarters at a total cost of approximately $10,300,000, including approximately $1,100,000 for personal property. It has since been continuously occupied by plaintiff for this purpose and the expert witnesses agreed that it is now serving its highest and best use, a fact which it is "appropriate to consider" in determining taxable value. Hackensack Water Company v. Borough of Old Tappan, 77 N.J. 208, 213 (1978).
*265 "Functional obsolescence" is a term used to describe the diminution of a building's market value resulting from the fact that it contains costly features which were installed to gratify the owner or which are unique to the special purpose of the building but which do not enhance its value on the market. The terms "superfluity," "duplication of facilities" and "overbuilding" are also used to describe such structures whose functional characteristics exceed reasonably foreseeable demands. Bostian v. Franklin State Bank, 167 N.J. Super. 564, 572-73 (App.Div. 1979). Investments made to satisfy the whim of an owner, or for a special purpose, or out of extravagance are not necessarily reflected in the building's fair market value. Id. at 570. This is unrelated to factors such as outmoded characteristics associated with the age of the building or failure to keep pace with advancing technology. Id. at 576.
In Bostian, supra, we noted that the record revealed "abundant evidence of over-improvements and features uniquely designed for the special purpose of a home office bank building and which might well not be recoverable as part of a fair market price." Ibid. But because the judge of taxation had made no findings as to these we were "unable to determine what consideration, if any, was given thereto or to appraise the correctness of the Division's determination to allow nothing for functional obsolescence." Ibid. Accordingly, we there remanded in order to obtain "complete findings and conclusions relative to the issue of functional obsolescence." Ibid. Not presented on that appeal, as it is here, was the contention that an adjustment for functional obsolescence is not allowable where the improvement's extravagant characteristics were designed to satisfy the current taxpayer's requirements. However, after the hearing on remand it was decided by the Tax Court that the claim for functional obsolescence had not been proved. This conclusion rested on the findings that notwithstanding its allegedly overbuilt and special nature, the bank building was then functional for its purposes, that it "was designed to impress the public," and that it was then serving its highest and best use. Bostian v. *266 Franklin State Bank, 1 N.J. Tax 270, 274 (1980). We thereafter affirmed on the trial judge's findings of fact and "soundly reasoned conclusions of law." 179 N.J. Super. 174, 2 N.J. Tax 391 (App.Div. 1980).
The detailed findings and conclusions of the Tax Court in the case before us were based upon the following proofs:
(1) The buildings were constructed to serve the purposes of an international corporate headquarters and contained features which would not normally be found in a general office building;
(2) of the 251,000 square feet of gross area within the buildings only 160,500 are available for use as office space;
(3) the ground area covered by the buildings is 101,832 square feet, only 10.6% of the land;
(4) the interconnecting bridges, which are useful only for purposes of access between the separate buildings, would have to be closed if the buildings were ever leased to separate tenants;
(5) the 34,000 square feet of terraces, while attractive, are neither rentable nor utilitarian;
(6) the escalators in one of the buildings, although functionally valuable, occupy five or six times as much space as an elevator;
(7) the climate control system, known as the "Cadillac" of its kind, operates at a cost of $1.50 per square foot in contrast to the cost range of between $.40 and $.60 which would be found in the ordinary general office building.
The rationale of the Tax Court in allowing 16% for functional obsolescence is expressed in the following excerpt from its letter opinion of November 5, 1982:
The CPC office complex was designed for use as a corporate headquarters. The building layout and expensive heating system all represent excessive costs which are not fully returnable in the market. The borough relies on the Bostian decision on remand to argue that no functional obsolescence is present, but in Bostian the bank's president testified that the building was "just about" functional for its purposes. 1 N.J. Tax at 274. In the present case the CPC buildings have features that are not necessary even for its relatively specialized use.
We observe first that the test of functional obsolescence does not turn on the question of necessity. Determining what is or is not necessary for a building's purpose involves the making of highly relative judgments; indeed, by some standards one can hardly imagine any building free of unnecessary features which, nevertheless, retain their value on the open market. The test is whether the features claimed for functional obsolescence are *267 nonutilitarian to the point that the recovery of their cost in an open sale can only be premised on the expectation of a wantonly extravagant buyer or one having the same unique requirements as the owner.
We further observe that the Tax Court nowhere specified the features it felt were unnecessary even for plaintiff's "relatively specialized use." The issue of functional obsolescence is one as to which the taxpayer has the burden of proof, RCA Corp. v. East Windsor Tp., 1 N.J. Tax 481, 503-04 (1980), and it was not incumbent upon the defendant to show that the building was functional for its present use. Since we find nothing, apart from the Tax Court's unsubstantiated conclusion, to demonstrate any such functional impairments, we conclude that none exist and that the property in question is fully functional for plaintiff's present purposes.
Built to plaintiff's specifications, these lavish improvements serve purposes which, from plaintiff's perspective, are highly utilitarian. Plaintiff is a large international business enterprise, and under worldly standards its interests are concretely promoted by identifying itself with an image of institutional grandeur. Though many features of these structures greatly exceed the bare necessities of a general office building, they clearly serve plaintiff's purpose of visibly enhancing its prestige in the business community by an artful blend of function and aesthetics. Such benefits have been held to constitute a value intrinsic to the building itself. See Joseph E. Seagram & Sons, Inc. v. Tax Com'n, 251 N.Y.S.2d 460, 462, 14 N.Y.2d 314, 317, 200 N.E.2d 447, 448 (Ct.App. 1964), aff'g 18 A.D.2d 109, 238 N.Y.S.2d 228 (App.Div. 1963).
Plaintiff argues that by taking the foregoing factor into account the applicable test of market value, for tax assessment purposes, is displaced by the test of value to the owner. For taxation purposes fair market value is the price which could be obtained for the property, in money, at a fair sale between a willing seller not obliged to sell and a willing buyer not obliged *268 to buy. N.J.S.A. 54:4-23; Hackensack Water Company v. Borough of Old Tappan, 77 N.J. 208, 213 (1978). Plaintiff maintains that the likelihood of a buyer with requirements comparable to plaintiff's is so remote that the cost of the buildings' indulgences and special purpose features is not recoverable on the market and was therefore properly adjusted by the Tax Court for functional obsolescence. The argument overlooks two governing propositions. The first is that the sale contemplated as the criterion of market value is a "hypothetical sale; hence, the would-be buyers are hypothetical buyers, not actual and existing purchasers." United New Jersey, etc., Co. v. State Board etc., 100 N.J.L. 131, 135 (E. & A. 1924). From the context in which it was made we can only understand this reference to a hypothetical buyer to contemplate one whose requirements are reasonably accommodated by the property in question.
The concept of a hypothetical sale was earlier enunciated in the frequently cited case of Turnley v. Elizabeth, 76 N.J.L. 42 (Sup.Ct. 1908). There the taxpayer sought a reduction from the assessed valuation of his residence for "a number of features and fancies that, while adding greatly to its cost, have added little or nothing to its selling price or market value." Id. at 44. Although the court found that he was entitled "to some reduction of the valuation placed upon his residence," Ibid., it did not describe the nature of the improvements for which the reduction was allowed. It then disposed of the balance of the taxpayer's claim on the same page in the following language:
We are not disposed, however, to give much force to the argument that because there are very few actual buyers for so costly a residence the valuation to be placed upon it under the statutory criterion should be correspondingly depreciated. The criterion established by the statute is a hypothetical sale, hence the buyers therein referred to are hypothetical buyers, not actual and existing purchasers. If this be not so, a citizen, by the erection of a residence so costly that no one could buy it, would escape all taxation, which is obviously not the intent of the legislature or the proper interpretation of its statute. Taxation normally bears some relation both to the degree of protection required by the taxpayer and to his ability to contribute to such public burden as manifested by the permanent improvement of his real property. Mere costliness, therefore, cannot rationally be made the basis of exemption from taxation.
*269 The second governing proposition bears on the intent and purpose of the taxpayer. Its substance is that no reduction from taxable value will be allowed for special purpose characteristics where these were built into the structure by the taxpayer without regard to the recoverability of their costs and the question of their marketable value is not raised by any realistic suggestion that the property is about to be offered for sale. In Royal Mfg. Co. v. Bd. of Equal. of Taxes, 76 N.J.L. 402 (Sup.Ct. 1908), aff'd 78 N.J.L. 337 (E. & A. 1909), the taxpayer sought a reduction from valuation on the claim that his particular factory buildings "were of an unusual type, constructed especially for the purposes of the prosecutor and unsuited to ordinary manufacturing purposes, and, therefore, in case of sale would command a still less percentage [of valuation]...." The court held that since the business had been constructed for the purpose of a new enterprise, "and no question of disposing of the property as a second-hand factory plant had arisen or seemed likely to arise," the test of its selling price on the open market was inappropriate and the expert testimony with respect thereto "was irrelevant and useless." To like effect is Griffith v. Newark, 125 N.J.L. 57 (Sup.Ct. 1940), where the court declined to employ the capitalization of income approach in the valuation of a building which the taxpayer had built as a "sort of monument to himself" on the reasoning that "value was put into the structure on which no adequate return was anticipated." See also I Bonbright, Valuation of Property 472-479 (1st Ed. 1937).
The operative principle which we distill from the foregoing opinions and from Bostian v. Franklin State Bank, 1 N.J. Tax 270, 274 (1980), aff'd 179 N.J. Super. 174, 2 N.J. Tax 391 (App.Div. 1980), is that no allowance will be made for the special purpose character of the building or for overbuilt features where the original owner erected the building for his own needs, remains in possession, and continues to enjoy the improvements which it installed and for which the allowance is claimed. Its applicability to the facts herein seems clear. Although the sumptuous features of the property may not be reflected in *270 rental income or selling price, they were not installed for these purposes and actually they enhance the value of the building for those very purposes for which they were built. There is no evidence of any intent on plaintiff's part other than to occupy the structures for its own special purpose so that the testimony received in the Tax Court as to the nonrecoverability of "excessive costs" was, in the language of Royal Mfg. Co., supra, "irrelevant and useless," and on this basis the adjustment for functional obsolescence should not be allowed.
Our research discloses that courts of other jurisdictions which have considered this question under standards of valuation comparable to ours have expressed substantially similar views. Federal Reserve Bank of MPLS v. State, 313 N.W.2d 619 (Minn.Sup.Ct. 1981); Stephen v. Stephen Properties, Inc. v. State Tax Com'n, 499 S.W.2d 798 (Mo.Sup.Ct. 1973); Joseph E. Seagram & Sons, Inc. v. Tax Com'n, supra. Contra First Fed. Sav. & Loan Assn. v. City of Flint, 415 Mich. 702, 329 N.W.2d 755 (Sup.Ct. 1983).
Defendant also complains that the Tax Court erred in denying its application to submit what it describes as newly discovered evidence. Hearings in this matter concluded on January 27, 1981. On August 19, 1981 defendant moved to reopen the proceedings on the basis of two contracts entered into during the early part of 1981 for the sale of real property that it claimed was "virtually identical" for purposes of valuation to the property of plaintiff. We see little relevance between the selling prices shown in contracts for the sale of comparable properties during the year 1981 and the valuation of plaintiff's property for the years 1978, 1979 and 1980. The question raised by defendant was addressed to the sound discretion of the Tax Court, Henry Clay v. Jersey City, 84 N.J. Super. 9, 17-18 (App.Div.), certif. den. 43 N.J. 264 (1964), and we perceive no mistaken exercise of discretion in denying defendant's motion.
We have examined defendant's other contentions on this appeal and find them to be lacking in merit. R. 2:11-3(e)(1)(E).
*271 The judgment under review is vacated and the matter is remanded to the Tax Court for recalculation of assessed valuation for the years 1978, 1979 and 1980 in accordance with the views herein expressed.
JOELSON, J.A.D., concurring.
A wealthy financier is reputed to have remarked that if you must be concerned about the cost of upkeep, you should not buy a yacht. Similarly, corporate officials who must worry about a large tax assessment should not construct a place of splendor and magnificence. Having decided that opulent campus-type headquarters would enhance the prestige of its corporate image, the corporation here should pay taxes on the basis of the value to it of its headquarters as long as it occupies them.