LASSER, P.J.T.C.
Taxpayer contests the 1986 local property tax assessment on industrial property at Hechman and Bate Streets in Phillips-burg, Warren County, New Jersey, known as Block 4.S, Lot 76. Taxpayer has filed a direct complaint in the Tax Court pursuant to N.J.S.A. 54:3-21. Valuation and discrimination are in issue. The 1986 assessment is:
Land $ 97,350
Improvements 1,426,750
Total $1,524,100
The Director’s common level ratio for Phillipsburg for 1986 is 79.38%, with an upper limit of 91.29% and a lower limit of 67.47%. The 1986 Phillipsburg tax rate is $4.09.
The property consists of a parcel of land 5.56 acres in size. The parties have stipulated that the land value of the subject is $30,000 an acre or a total of $166,800.
A brief description of the six interconnected one-and two-story buildings located on the property follows:
*510 Building No. of Date Sq. ft. No. stories built area Construction Use
1945 3,516 Brick on block Office
1968 3,428 Brick on block Office
1985 1,576 Brick on block Office
1945 36,620 Steel frame/ brick on block Manufacturing & loading dock
1955 24,226 Steel frame/ brick on block Manufacturing & storage
1 1970 9,506 Steel frame/ concrete block Storage, shipping & dock
Total 78,872[1]
The subject property is an attractive and well-maintained textile manufacturing plant used for the manufacture of ribbon. It was constructed in sections by taxpayer from 1945 to 1985 and occupied by taxpayer from 1945 to the present. The buildings are designed to serve the flow of operations from intake at building 4, to manufacturing in buildings 4 and 5, to storage in the lower level of building 5 and to shipping from building 6.
The buildings are fully sprinklered and all but 1,200 square feet are air-conditioned. There are facilities to provide processed steam for manufacturing. Of the total 78,872 square feet, 8,520 square feet are devoted to modern office space, including executive offices. The most recent addition in 1985 provided more office space. The main manufacturing area, building 4, has a reinforced concrete floor, 20-foot high ceilings and 50-by 75-foot open bays. Building 4 and the upper level of building 5 are at the same level. Building 6 is one-half level below the upper level of building 5. There is a lift that services buildings 5 and 6.
*511 I.
Taxpayer’s appraisal expert valued the property by the cost and market approaches. Using the Marshall Valuation Service unit-in-place technique, this expert analyzed each of the six buildings separately as Class C average buildings to obtain the reproduction cost new. He concluded that the cost new on October 1, 1985 was:
Cost new of buildings 1-6 $2,967,024
Site improvements 143,881
Total cost new of all improvements $3,110,905
From this cost, the expert deducted 74.4%, or $2,314,513, as depreciation from all causes, for a depreciated cost of $796,392. To this figure he added land value of $170,000 (rounded) for a total value by the cost approach of $966,392.
This expert arrived at his depreciation rate by analyzing five comparable sales, which he later relied on for his market approach value. He deducted from the purchase price of each comparable sale property a figure which, in his opinion, represented land value, deducted the resulting figure from the replacement cost of the improvements derived from the Marshall Valuation Service and divided the result by the actual age of the building weighted by size.[2] This calculation yielded a figure which the expert used as the annual depreciation rate for the comparable sale property. Using this process he found that the annual depreciation rates ranged from 1.17% to 2.88%, and selected 2.4% as the depreciation rate for the subject property. He multiplied this figure by the actual age of the subject property weighted by size (2.4% x 31 years) to arrive at a 74.4% annual depreciation rate for the subject.
In his market approach this expert first examined sales of five industrial properties in the Warren County area of the *512 subject property, but he rejected them as not comparable. He testified that since the Phillipsburg market for industrial space was separate from and not affected by the New York or Philadelphia markets, he sought comparable sales of industrial property in a similar market. He chose Mercer County, using sales of three properties in Hamilton Township and two in Lawrence Township. These five properties ranged in sale price from $775,000 to $3,475,000 ($7.73 to $17.65 a square foot), in time from May 1981 to December 1985, in building size from 57,060 to 235,975 square feet and in land size from 3.731 to 23.7 acres. In analyzing each comparable sale property, the expert adjusted the sale price for time, land-to-building ratio, size, age, location and utility. He concluded that the sale prices indicated a sale price for the subject ranging from $6.34 to $14.65 a square foot. The expert concluded from this analysis that the subject had a value of $11 a square foot of improvements or a total value for land and improvements by the market approach of $870,000 (rounded) (78,872 X $ll/sq. ft. = $867,592). This expert’s final conclusion of the fair market value of the property was $870,000.
This expert testified that, in his opinion, the' income approach could not be used to value the subject property because the property could not be rented to more than one occupant without major renovations, and features of the buildings, specifically, the loading dock, central heating system and the overall design of the buildings, make the property unattractive for investment purposes, and attractive only for purchase by an owner-user.
II.
The appraisal expert for the taxing district described the property and its use. He testified that the ribbon manufacturing process requires a moist atmosphere and that in addition to air-conditioning throughout the building (except the storage area in the lower level of building 5) there is a humidifying system of piping and nozzles which sprays water into the air in the vicinity of the air-conditioning vents so that the air flowing from the vents diffuses the water into the air. He stated that *513 the municipal water supply is insufficient for the needs of this manufacturing business, and therefore taxpayer has installed a well and a system for recycling water used in the air cooling system. Like most textile manufacturing businesses, taxpayer’s business is cyclical, and therefore a large portion of the property is devoted to storage, to enable inventories to be increased in preparation for holiday seasons.
Taxing district’s appraisal expert relied on the cost, market and income approaches in arriving at his opinion of value. In his cost approach he also used the Marshall Valuation Service, but unlike taxpayer’s expert, he used a cost rank of “above average” instead of average or plain. He used an effective age of 18 years rather than the weighted actual age of 31 years used by taxpayer’s expert. Taxing district’s expert’s cost approach resulted in a replacement cost of $3,352,488, to which he added $350,000 for entrepreneurial profit and overhead, for a total of $3,702,488. He deducted 45% for depreciation (35% physical and 10% functional), resulting in a depreciated cost, including entrepreneurial profit, of $2,036,370, to which he added $166,800 for land and $50,000 for site improvements for a total depreciated replacement cost of $2,253,170.
In his market approach, taxing district’s expert relied on three sales, one in Hackettstown, one in Lopatcong and one in Phillipsburg. After adjustment for size, quality and age, he concluded from these sales that the subject would have a sale price of $25.89 to $29.18 a square foot. He selected a value estimate of $28 a square foot and concluded from the market approach that the value of the property was $2,204,384 (78,728 sq. ft. X $28 = $2,204,384).
Taxing district’s expert relied on lease data from three industrial properties, one in Lebanon Borough and two in Branch-burg. From these leases, and adjusting for size, quality and age, this expert concluded that the subject property would rent for between $3.20 and $3.76 a square foot. He selected $3.50 a square foot and arrived at a rental of $275,548 (78,728 X $3.50 = $275,548). From this figure he deducted a total of 10% for *514 vacancy, collection loss, insurance, management and contingencies, for a net operating income of $247,993, which he capitalized at an overall capitalization rate of 11.5% for a value by the income approach of $2,156,461. He concluded from the values found by the three approaches that his final value estimate for land and improvements was $2,200,000.
III.
Taxpayer contends that the highest and best use of the property is for general industrial purposes, and that therefore it must be valued as if vacant and offered for sale to a purchaser who would use it for industrial purposes other than textile manufacturing. Taxing district’s expert states that the highest and best use of the property is its present use for textile manufacturing purposes, and that the most likely purchaser for this highest and best use is a textile manufacturer who can take advantage of the plant as presently outfitted. Taxpayer contends that real property improvements installed for the textile manufacturing operation would be useless to a prospective purchaser who intended to use the property for general industrial purposes and, therefore, the improvements are valueless. Thus, the issue posed is whether the textile manufacturing real property improvements in existence and in use on the assessing date should be valued and assessed, or should be assumed to be valueless because a prospective purchaser who is not in the textile business would have no use for them.
Property must be valued at its highest and best use. Highest and best use is defined as “the reasonable and probable use that supports the highest present value.” American Institute of Real Estate Appraisers, The Appraisal of Real Estate (8 ed. 1983) at 28. See Owens-Illinois Glass Co. v. Bridgeton, 8 N.J.Tax 495, 501-502 (Tax Ct.1986). The purchaser who will pay the highest price for the subject property is a purchaser who intends to use it for textile manufacturing. A purchaser who would buy the subject for a different use, such *515 as a warehouse, would not be able to take advantage of the real property in its present configuration and therefore would not pay a price equal to its highest present value. No evidence has been presented to show that there is no market for a textile manufacturing plant. I must therefore assume that a market for a textile plant exists and that this use is the highest and best use for the subject property.
Taxpayer’s expert has valued the property as a general purpose industrial building; taxing district’s expert has valued it as a textile manufacturing plant. The difference is most apparent in the depreciation rates used by the experts in their cost approaches. Although taxpayer’s expert did not separately show the breakdown of his rate among physical, economic and functional depreciation, it is apparent from his testimony that a part of his depreciation rate is attributable to obsolescence. It appears that valuing the property as a general industrial plant rather than as a textile manufacturing plant accounts in part for the difference in the experts’ deductions for depreciation.
The subject property is neither property which is vacant nor property which has proven difficult to market because of its characteristics. This property is actively being used for the purpose for which it was designed and built. I find that the subject property must be valued at its highest and best use, which is as a textile manufacturing plant. See CPC International, Inc. v. Englewood Cliffs, 193 N.J.Super. 261, 473 A.2d 548 (App.Div.1984), certif. den. 97 N.J. 578, 483 A.2d 124 (1984).
IV.
I find the valuations derived by both experts from the market approach to be unreliable. Taxpayer’s five sales are all in Mercer County, a real estate market considerably removed from the subject. They were selected by taxpayer’s expert because they were out of the New York metropolitan area, as is the subject property. However, I am not persuaded that sales of industrial properties in Hamilton and Lawrence Townships *516 reflect the existing market for industrial space in Phillipsburg, or that in these sales the purchaser intended to pursue the same activity that was previously conducted in the property.[3] Purchases of vacant buildings for a changed use tend to reflect lower prices than purchases by a user who can continue an existing operation.
The three sales used by taxing district’s expert are also of dubious import. The first two, although within the Warren County industrial market, have been reported by the assessors of the municipalities in which they are located and accepted by the Director of the Division of Taxation as unusable sales because they included personal property (machinery and equipment).[4] In addition, taxing district’s sale number one in Hackettstown was of a property containing 37,000 square feet, of which approximately 20,000 square feet was office space, making it not comparable. Taxing district’s sale number three may have included the sale of the business operated in the property and also may have included machinery and equipment. The sale closed on September 2, 1986, almost one year after the October 1, 1985 subject assessing date. The most that can be said for taxpayer’s five sales and taxing district’s three sales is that they provide a sale price range of $10 to $30 a square foot, but they do not reflect the value of the subject property.
Similarly, I am not persuaded that taxing district’s expert’s income approach is indicative of the value of the subject property because the three industrial rentals relied on by this expert are located in Somerset and Hunterdon Counties, also a considerable distance from the subject property and in a different market for industrial space.
*517 Having rejected the market and income approaches of the experts by reason of lack of persuasive evidence, I find from the evidence that the value of the subject property can be determined by use of the cost approach. Taxpayer’s expert found the reproduction cost new, including site improvements, to be $3,110,905, and taxing district’s expert found the replacement cost new of the improvements, including site improvements but before adding entrepreneurial profit and overhead, to be $3,402,488. See Coca-Cola Bottling Co. of N.Y. v. Neptune Tp., 8 N.J.Tax 169 (Tax Ct.1986) (the cost approach may predominate if the proofs submitted in support of that approach are more reliable than those submitted in support of any other approach).
I find that the subject’s quality is better than the average class used by taxpayer’s expert, and accept taxing district’s expert’s cost new because it is based on a grade rank of above average. I accept taxing district’s expert’s use of entrepreneurial profit. Although there is no acceptable market-derived evidence of the price that the subject property will sell for in the market, it is necessary to include a figure which reflects the time, effort and incidental expense of the owner in the development of the property. See Lawrence Associates v. Lawrence Tp., 5 N.J.Tax 481, 535 (Tax Ct.1983). Taxing district’s appraisal expert added entrepreneurial profit of $350,000 (10.44%) to cover these items. I find 10.44% excessive for a single-user industrial property and reduce it to 5% to reflect entrepreneurial profit and the portion of the soft costs that are not already included in the Marshall Valuation Service replacement cost figures. I accept taxing district’s expert’s effective age of 18 years, rather than the actual age used by taxpayer’s expert, because the property appears to be well maintained and in good condition, and replacements made since the original construction have increased the life of the building. The effective age of property may be less than its actual age where the building has received better than average maintenance or has been rehabilitated or modernized. The Appraisal of Real Estate, supra at 473.
*518 In support of his 74.4% depreciation rate, taxpayer’s expert emphasizes the functional obsolescence of the property due to the differing floor levels and an older humidifying system, in addition to his opinion that the property should be valued as a general industrial building as if vacant. However, the buildings were all built by the owner and are apparently suited to its textile manufacturing purposes. Further, the most recent addition prior to the assessing date was completed in 1985 and involved an addition to the executive offices and the modernizing and refurbishing of the existing office space, all at a cost of approximately $250,000. Subsequent to the assessing date a loading dock in building 6 was extended.
I do not accept taxpayer’s expert’s depreciation rate, which is based on his five comparable sales, for the same reasons that I have rejected those comparable sales.
I accept taxing district’s expert’s physical depreciation of 35% (which amounts to approximately 2% a year for the 18-year effective age), but increase the functional depreciation from 10% to 25% to take into consideration the functional obsolescence caused by the fact that the buildings were built at different times, with different floor levels between buildings 5 and 6, as well as certain deficiencies in the loading dock and the lift between floors.
Based on the foregoing I arrive at a cost approach value as follows:
Replacement cost new $3,352,488
Entrepreneurial profit (5%) 167,624
$3,520,112
Depreciation 35% physical
25% functional
60% -2,112,067
Buildings value $1,408,045
Site improvements 50,000
Land value 166,800
Total value $1,624,845
*519 The chapter 123 common level range for Phillipsburg for 1986 is 67.47%-91.29%. The assessment of $1,524,100, is outside the common level range (91.29% X $1,624,845 = $1,483,-321). Therefore, the assessment must be reduced to the common level ratio of 79.38%.
The Clerk of the Tax Court is directed to enter judgment reducing the 1986 local property tax assessment on the subject property to:
Land $ 132,400
Improvements 1,157,400
Total $1,289,800

Taxing district’s expert testified to a total area of 78,728 square feet.

To obtain the age weighted by size of a multiple building complex where buildings were built at different times, the expert multiplied the actual age of each separate building by the square foot area of each, and divided the result by the average of the square feet of all of the buildings combined.

I also am not persuaded that this expert’s deduction of 15% for location and 15% for utility of the subject and his use of the actual age instead of effective age are proper adjustments.

As reported on SR1A forms to the Director of the Division of Taxation for his sales ratio study pursuant to N.J.S.A. 54:1-35.1 et seq.